### Clarence Wood v. The State.

#### No. 4199.   Decided October 18, 1916.

#### Rehearing overruled November 15, 1916.

**1.—Rape—Sufficiency of the Evidence.**

Where, upon trial of rape by force, the evidence was sufficient to sustain the conviction, under a proper charge of the court, there was no reversible error.

**2.—Same—Continuance—Second Application—Other Witnesses.**

Where the allegations in defendant's second application for a continuance showed that the alleged absent testimony was testified to by other witness, there was no error in overruling the application. Following Fisher v. State, 4 Texas Crim. App., 181, and other cases.

**3.—Same—Evidence—Complaint of Prosecutrix—Condition of Prosecutrix.**

Upon trial of rape by force, there was no error in admitting in evidence the testimony of the prosecutrix that after the offense, when she went home that night, she did not tell her parents of the occurrence that night on account of their age, but that after a sleepless night, early the next morning she told a neighbor, and also her mother without stating the details, and that at the time she made such complaint she was very nervous and continued to be so for some time thereafter, and that she had bruises on her arm and back. Following Pefferling v. State, 40 Texas, 487, and other cases.

**4.—Same—Evidence—Want of Consent—Resistance—Opinion of Witness.**

Where, upon trial of rape, the prosecutrix testified to her various acts of resistance in detail to prevent the defendant from accomplishing her ruin, there was no error in permitting her to testify that she resisted defendant all she could and did everything she knew how; this was not a conclusion or opinion of the witness.

**5.—Same—Evidence—Fabrication.**

Where, upon trial of rape, the defense produced testimony to support defendant's claim that prosecutrix consented and that this was shown by a visit of defendant's brother-in-law to the scene of the transaction, and it was the contention of the State that this was a fabrication, there was no error in permitting the State to show, on cross-examination of the defendant, that while he was in jail, charged with this offense, his brother-in-law visited him, and that after his release therefrom, they went to the place where defendant claimed the act of intercourse occurred, etc.

**5.—Same—Evidence—Impeaching Own Witness.**

When defendant introduced a witness, it was immaterial who had him subpoenaed, as defendant vouched for him, and is not permitted to impeach him, unless he should testify to some fact which is damaging to his cause, and of

which he was unaware, and where it appeared that the witness testified to the same facts on a former trial, the State elicited from him on cross-examination, he would not be allowed to impeach him.

### 6.—Same—Evidence—Other Acts of Intercourse—Rule Stated.

It is a general rule that in rape cases, acts of the prosecutrix with others than defendant are not admissible in evidence, and where it developed that defendant's witness on direct examination had testified that he had hugged and kissed the prosecutrix, there was no error after the court heard all the testimony on this point in the absence of the jury, to exclude it on motion of the State, and not to permit defendant to impeach his own witness on this matter.

### 7.—Same—Charge of Court—Consent—Resistance.

Where, upon trial of rape by force, the court gave a full and correct charge on the question of consent and resistance, a complaint that the same was too restricted, etc., was untenable.

### 8.—Same—Intent—Charge of Court.

Where, upon trial of rape by force, the defendant as well as the prosecutrix both testified to a completed act of sexual intercourse, there was no question of intent of defendant, and no error in refusing a charge thereon; the court's charge being correct in all respects.

### 9.—Same—Limiting Testimony—Charge of Court.

Where, upon trial of rape, the court properly limited the testimony that defendant had been indicted for horse theft, there was no reversible error.

### 10.—Same—Argument of Counsel.

Where, upon trial of rape by force, certain remarks by the district attorney were withdrawn by the court and were not of such nature as to be otherwise grounds for reversal, and other objections to the argument of counsel did not show that State's counsel used improper or illegitimate language, but showed that the counsel remained in the record, and no injury resulted, there was no reversible error.

### 11.—Same—Misconduct of Jury—Defendant As a Witness.

Where, upon trial of rape by force, defendant testified that he had been indicted for horse theft, but had not testified as to the disposition of this charge, and this matter was discussed among the jurors as to whether he had been convicted thereof, and said testimony had been properly limited, and no injury was shown, there was no reversible error.

### 12.—Same—Rule Stated—Chastity of Prosecutrix—Impeaching Own Witness.

While the rule is that the general character for chastity of the alleged injured female in rape cases may be shown to be bad, not in justification but as weakening the evidence as to the question of consent, yet *it* is not permissible to prove particular instances of unchastity, except with the defendant, and there was no error in withdrawing testimony that the prosecutrix had merely kissed another man, nor was it permissible for defendant to show the bias and interest of his own witness to affect his credibility, the defendant being aware as to what the witness would testify. Distinguishing Curry v. State, 72 Texas Crim. Rep., 463, 162 S. W. Rep., 851.

### 13.—Same—Evidence—Conversation.

Where it was obvious that a portion of the testimony offered by the defendant had no relation to that part of it introduced by the State, and was not necessary to make that introduced understood, the provision of the statute which provides that when part of a conversation is introduced, it all becomes admissible, had no application.

**14.—Same—Argument of Counsel.**

Where certain argument of State's counsel was withdrawn by the court and no additional instructions requested, there was no reversible error.

**15.—Same—Charge of Court—Requested Charges.**

Where the court had fully defined consent, in a trial of rape by force, it was not necessary to give requested charges on that issue.

Appeal from the District Court of Coleman. Tried below before the Hon. John W. Goodwin.

Appeal from a conviction of rape by force; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Snodgrass, Dibrell & Snodgrass* and *Woodward & Baker,* for appellant.—On question of excluding testimony of defendant's witness Sam Cobb: Jackson v. State, 77 Texas Crim. Rep., 483, 179 S. W. Rep., 711; Thompson v. State, 48 Texas Crim. Rep., 85; Boder v. State, 57 Texas Crim. Rep., 293, 122 S. W. Rep., 555; Curry v. State, 72 Texas Crim. Rep., 463; Pope v. State, 65 Texas Crim. Rep., 51, 143 S. W. Rep., 611; Gelber v. State, 56 Texas Crim. Rep., 460, 120 S. W. Rep., 863; Green v. State, 54 Texas Crim. Rep., 3, 111 S. W. Rep., 933; Leach v. Com., 112 S. W. Rep., 595; Hernandez v. State, 79 Texas Crim. Rep., 182, 183 S. W. Rep., 440; Sexton v. State, 48 Texas Crim. Rep., 497; Crist v. State, 21 Texas Crim. App., 361.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of chastity of prosecutrix: 2 Branch's Ann. P. C., p. 1003; Whitehead v. State, 65 Texas Crim. Rep., 168, and cases stated in opinion.

On question of complaint by prosecutrix: 2 Branch's Ann. P. C., p. 1001; Pettus v. State, 58 Texas Crim. Rep., 546, and cases stated in opinion.

HARPER, JUDGE.—Appellant was convicted of rape by force and his punishment assessed at five years confinement in the State penitentiary.

Miss Virginia Riley testified that on February 17 Dude White telephoned her, stating that appellant desired to take her to the show at Santa Anna that night; that her father objected to her going, and she could not go; that Dude then asked her if she would go with appellant to Charlie Freeman's and play forty-two, and that he, White, was going and would play with Mr. Freeman's daughter. Witness testified she consented to go to Freeman's and that night about 8 o'clock or 8:30, appellant came and they drove to Mr. Freeman's. When they got there appellant remarked, "Dude has not got here yet, and let's drive down the road a piece," as he wanted to get a cotton sack out of the field. She consented. They drove down the road about a quarter of a mile, when appellant stopped the horse and got out as if to get the sack, walked around the back of the buggy, threw a powder of some kind

in her face, and caught hold of her, pulling her out of the buggy, that she fell on her back, when appellant by force outraged her person; that she screamed, and resisted to her utmost, going into details as to what she did. Appellant testified, and admitted that he got Dude White to telephone Miss Riley; that Miss Riley did answer that her father objected to her going to Santa Anna but he also testified she said, "We will tell them we are going to Mr. Freeman's but go to Santa Anna instead"; that he went for her about the time Miss Riley testified, and they started as if going to Mr. Freeman's, but in reality intending to go to Santa Anna; that on the road Miss Riley so conducted herself, and from her conversation he believed she would submit to him; that he asked her to do so, and she at first objected, but finally got out of the buggy, and he spread a lap robe, and they had sexual intercourse at a different place to that testified to by Miss Riley; that Miss Riley offered no resistance, and he used no force.

Dude White testified for appellant as to the telephone conversation and corroborated appellant as to his version of the engagement.

Sam Cobb testified he overheard the telephone conversation and corroborated Miss Riley—that the engagement was to go to Mr. Freeman's to play forty-two.

Appellant earnestly insists that the testimony is insufficient to support the conviction. To this contention we can not give our assent. Miss Riley's testimony makes a case, especially when several witnesses testify to bruises on her back and on both her arms.

Appellant's first bill complains of the action of the court in overruling his application for a continuance on account of the absence of Mrs. Nona Moore, who, at the time of the alleged occurrence, lived only a quarter of a mile from the scene as testified to by Miss Riley. She would have testified she was at home that night and heard no one scream. Appellant contends this testimony is material, as the State used L. C. Dunn as a witness, who testified he was at home reading, had his door open and he heard screams about the hour Miss Riley testified to screaming. Dunn lived some further from the scene than did Mrs. Moore, but in the application it is not stated what she was doing at that time, nor whether her house was open or closed. This is the second application for a continuance, and it is the rule that there is no error in refusing it, when the absent witness would only testify to facts testified to by other witnesses. Appellant introduced several witnesses living in this neighborhood, who testified that they heard no screaming that night, and under such circumstances the bill presents no error. Fisher v. State, 4 Texas Crim. App., 181; Walker v. State, 13 Texas Crim. App., 618; Beatey v. State, 16 Texas Crim. App., 421; Tucker v. State, 23 Texas Crim. App., 512; Hooper v. State, 29 Texas Crim. App., 614; Bluman v. State, 33 Texas Crim. Rep., 43; Bush v. State, 40 Texas Crim. Rep., 539; Buckner v. State, 55 Texas Crim. Rep., 511; Petty v. State, 59 Texas Crim. Rep., 586; Allen v. State, 64 Texas Crim. Rep., 225.

Miss Riley testified that when she went home that night, her mother and father were at home, and it was developed that she did not tell her mother or her father about the occurrence that night. She testified she did not sleep any that night, and that before sun-up next morning she went to Mrs. Elmore's, a near neighbor with whom she was intimate, and told her of the transaction. Nothing she told Mrs. Elmore was admitted in evidence, only the fact that the first complaint she made was to Mrs. Elmore the next morning before sun-up. After it was developed that she did not tell her mother and father about the transaction when she got home that night, she was permitted to testify that her father was an old man, seventy-four years of age, and that he was very feeble, and that her mother was sixty years of age. She was also permitted to testify that as she returned home from Mrs. Elmore's, her mother being then up, she told her mother; and her mother was permitted to testify that the girl then was nervous and crying and she continued to have nervous crying spells for a month or more. All this testimony was objected to, as is made manifest by appellant's bills of exception Nos. 10, 11, 12 and 22. If the complaint had been so soon after the occurrence as to be res gestae of the act, it would have been permissible for Mrs. Elmore and her mother to have testified what the girl said to them, but the court recognized the correct rule, and permitted neither of them to testify what Miss Riley said, only that she complained to them, and they then were permitted to testify as to her condition; that she was nervous, was crying and had bruises on her arm and back. Ever since the rendition of the opinion in Pefferling v. State, 40 Texas, 492, it has been the unbroken rule of decision that such testimony is admissible. In that case Judge Roberts said: "It has been universally held that recent complaint by the person injured, her state and appearance, marks of violence and her condition shortly after the alleged occurrence may be proved as original evidence." The court only permitted the witnesses to testify that complaint was made to them, and then testify as to her condition; and there was no error in admitting Mrs. Elmore's and Mrs. Riley's testimony. Lawson v. State, 17 Texas Crim. App., 292; Holst v. State, 23 Texas Crim. App., 1; Reddick v. State, 35 Texas Crim. Rep., 463; Pettus v. State, 58 Texas Crim. Rep., 546; Conger v. State, 63 Texas Crim. Rep., 312; Cortez v. State, 165 S. W. Rep., 1059, and cases cited in Branch's Penal Code, secs. 1784-1785. And after the mother testified as to the condition of the girl when she made complaint next morning, there was no error in permitting her to testify that she remained in that nervous condition for some time thereafter, and that she was crying on occasions when the subject was approached. This would be evidence of the severity of the shock to her mental and physical nature. Birge v. State, 73 Texas Crim. Rep., 505, 167 S. W. Rep., 63; Jacobs v. State, 66 Texas Crim. Rep., 146, and cases there cited and collated in Branch's Penal Code, sec. 1785. Nor was there any error in permitting the girl to testify that the reason she did not

tell her father and mother that night as soon as she got there, that they were old, her father seventy-four years of age and her mother sixty-seven—that her father was very feeble. This was an explanation of her conduct, as it was contended that her failure then to complain was a circumstance on the issue of consent. Such explanation was reasonable under the circumstances in evidence. But if such evidence had not been admissible as to the age of the parents, it would present no error, as the father and mother both testified on this trial, and the jury had a view of them. Appellant also contends it was error to permit the girl to testify that she resisted appellant "all she could," and "I did everything I knew how," he contending this was a conclusion and opinion of the witness. The record discloses that the girl testified to her various acts of resistance in detail, that when appellant grabbed and undertook to take her out of the buggy, she caught the iron rods of the top and undertook to prevent him from jerking her out; that he jerked her loose, and threw her on the ground; that she screamed, and he placed his hand over her mouth, etc., and after she had thus detailed the facts, there was no error in permitting her to tell that she resisted all she could, and did everything she knew how to prevent appellant from accomplishing her ruin.

Appellant complains of the action of the court in permitting the State to elicit from appellant on cross-examination that while he was in jail, charged with this offense, his brother-in-law, Claude White, visited him. The record discloses that as soon as the examining trial was held and appellant gave bond, this brother-in-law and appellant went to the place where appellant claimed the act of intercourse took place, and this brother-in-law claimed to have discovered things that would support appellant's contention, and he then went to Mr. Daniels and got him to visit the spot and look at the scene and the objects claimed to have been found there. It was evidently the contention of the State that this was a "frame-up" and under such circumstances there was no error in permitting the State to prove that this brother-in-law visited appellant while in jail; that the day he was released he and this brother-in-law were together that night, and the next day they went to a certain point and found the articles appellant contended would support his contention.

The only other bills in the record that relate to the admission and exclusion of testimony are bills Nos. 2, 3, 4 and 21, and all relate to the testimony of the witness Sam Cobb. When appellant called and introduced him as a witness it would be immaterial as to who had the subpoena issued for him, and the court did not err in so holding. When one introduces a witness he vouches for him, and is not permitted to impeach the witness unless the witness should testify to some fact that is damaging to his cause, which he was unaware the witness would testify to before placing him on the witness stand. No such condition arises in this case, as it is made to appear there had formerly been a trial of this case, at which the witness testified to the same facts the

State elicited from him on cross-examination at this trial. The witness Sam Cobb testified on cross-examination that while he and appellant were in Southern California appellant, in speaking of Miss Riley, had said, "It is there for him, and that he would get it—if he could not get it any other way he would rape her." Appellant on direct examination had proven by this witness that he had hugged and kissed Miss Riley when going with her, and on cross-examination said he had never told appellant anything about it. Appellant then desired to prove by the witness what he, appellant, claimed the witness had told him, and if he did not admit so telling appellant, he, appellant, then asked to be permitted to testify what he claimed this witness had told him. If appellant should propound the questions to the witness and he denied making any such statement to appellant, certainly appellant would be barred by the answer of the witness, and could not impeach him, and there was no error in refusing to permit appellant to testify what he claimed the witness had told him, if the witness should deny it. If the witness had admitted he so told appellant, yet if the witness denied the occurrence, certainly such testimony would not be admissible as affecting the girl, when the witness says if he ever told appellant any such thing it was not true. The court after hearing all this testimony, in the absence of the jury, then excluded that portion of the witness' testimony in which he said he had hugged and kissed Miss Riley, and so instructed the jury. Appellant excepted to such action on the part of the court and to giving such instructions, he contending that as the witness had testified to material facts against him, he should be permitted to show the relation existing between the witness and the girl as affecting his bias and credit. As hereinbefore stated, appellant knew the witness would testify in behalf of the State on cross-examination, as he did, the witness having so testified at a former trial, yet notwithstanding such knowledge, he placed the witness on the stand. Therefore, he was in no position to ask to be permitted to attack the credit of the witness. It is a general rule that in this character of case, acts of the girl with others are not admissible. Lawson v. State, 17 Texas Crim. App., 292. Appellant admits this is the rule; that such testimony is not admissible as affecting the girl, but he contends that it should be admitted as affecting the credit of the witness Cobb, but as hereinbefore stated, he is in no position to make such contention, as he had called the witness with knowledge that he would testify as he did on cross-examination. Then, again, the witness testified he had not visited nor been with the girl for more than a year; consequently such testimony would not tend to show bias at the time of the trial.

In his main charge, the court instructed the jury: "Third. In this case the indictment charges a rape by force, and I charge you that force, within the meaning of this statute, is defined as follows: To constitute rape by force, the accused must have ravished the alleged injured female by having carnal knowledge of her without her consent

and against her will by force, and the force used ·must have been such as might reasonably be supposed sufficient to overcome all resistance, within her power, taking into consideration the relative strength of the parties, and other circumstances of the case, and penetration of the sexual organ of the female alleged to have been ravished, by the male organ of the accused must be proved beyond a reasonable doubt.

"Fourth. The penalty prescribed by statute for the offense of rape is death or confinement in the penitentiary for life, or for any term of years not less than five, in the discretion of the jury.

"Accordingly, you are instructed that if you believe from the evidence, beyond a reasonable doubt, that the defendant did, as charged in the indictment, on or about the 17th day of February, 1915, in the County of Coleman and State of Texas, make an assault in and upon the said Virginia Riley, a woman, and did then and there by force violently ravish and have carnal knowledge of her, the said Virginia Riley, without her consent and against her will, you will find the defendant guilty as charged, and assess his punishment at death, or at confinement in the penitentiary for life, or, in your discretion, at such confinement for any term of years not less than five.

"Fifth. You are further instructed as a part of the law in this case, that the defendant stands charged with having carnal intercourse with the prosecutrix, Virginia Riley, without her consent, and by force; you are, therefore, instructed that it devolves upon the State in this case to prove beyond a reasonable doubt that the defendant did have carnal intercourse with the prosecutrix by force and without her consent, and before you can convict the defendant, you must believe from the evidence beyond a reasonable doubt that the prosecutrix not only did not consent, but that she put forth her utmost resistance to prevent the defendant from having carnal intercourse with her, considering the relative size and strength of the parties and conditions surrounding them at the time, and all other circumstances in the case, and if you have a reasonable doubt as to whether or not the prosecutrix did put forth her utmost resistance to prevent said carnal intercourse, it will be your duty to return a verdict of not guilty.

"Sixth. If from the evidence you believe that the prosecutrix, Virginia, Riley, consented to have carnal intercourse with the defendant, Clarence Wood, or if you entertain a reasonable doubt as to whether or not she did consent, then it will be your duty to acquit the defendant. It is not necessary that consent be in words, if she yields her person to the defendant, that would be, in law, consent."

We have copied these paragraphs of the charge, because they are the ones at which appellant's exceptions are aimed, and the questions to which the appellant's special charges refused are directed. Appellant's objections to paragraph No. 6 is that it does not name all the circumstances under which consent might be inferred and is too restrictive, and on this feature he requested several special charges, excepting to the refusal of the court to give same. No one was present except appel-

lant and the girl, and she testified to force being used and would make a case of rape  Appellant testified to the girl suggesting the matter by a dream she told him; that she voluntarily got out of the buggy, and when he spread the lap robe she voluntarily laid down and unpinned her drawers.  When the court in this paragraph instructed the jury that consent need not be in words, only that she yielded her person to the defendant he would not be guilty, it was a correct proposition of law, as applicable to the evidence, and having given this charge there was no error in refusing the special charges on this issue.

Appellant also objected to paragraph 4 of the charge, because in it he did not require the jury to believe that the girl used her utmost endeavor to prevent the intercourse.  In this paragraph he required the jury to find that beyond a reasonable doubt, appellant did by force "violently ravish," etc.  Having definded force in paragraphs 3 and 5 as he did, it was not necessary to again in paragraph 4 define the meaning of the word.

Appellant asked several charges on "intent" or appellant.  As the appellant and the girl both testify to a completed act of intercourse, there can be no question of what appellant's intent was on that occasion.  The only issue remaining was, did appellant use force to accomplish his purpose, or did she assent to the act, and this issue was fairly presented.

The court's charge on presumption of innocence and burden of proof was in accordance with the statutory provisions, and there was no necessity to give the special charge requested.

The court properly limited the testimony that appellant had been indicted for horse theft—in fact, the court's charge so admirably, fully and fairly presented the case as made by the testimony, there was no necessity to give any of the special charges requested and no error in refusing to do so.

There are eight bills of exception in the record complaining of isolated portions of the remarks of the district attorney in his closing address  The remarks complained of in bills Nos. 6, 28 and 29 were withdrawn by the court, and the jury instructed not to consider same, the court at the time rebuking the district attorney.  As these remarks were withdrawn, we will not discuss them further than to say they are not of the nature as to be ground for reversal under such circumstances.

In bills Nos. 23, 24, 25, 26, 27 and 28, the remarks hereinafter quoted were objected to:

First.  "The defendant was not only born a cripple, but he was born with a deformed heart."  Appellant had his father testify that he was born crippled in one foot and leg, and that they had always been smaller than the other.  If what the young lady testified is true, the acts of defendant would be such as to authorize the remark that his heart was deformed.

Second.  "If the law will not protect this girl with her innocence.

to the devil with the law." State's counsel certainly had the right to contend that the girl was innocent and had voluntarily committed no wrong. If not, his mouth would be closed in this character of case. The remarks were legitimate and not improper.

Third. "Clarence Wood, you know no more about love than a hog does about decency. My God, is that love to take this girl and beat her that way! If that is love, I hate my mother." Appellant had testified he loved the girl, and would have the jury to infer that the act of intercourse was the result of the relations existing between them by reason of their feelings, one towards the other. Testimony in the case is always the subject of argument and criticism, and while the remarks were forceful, yet he was discussing the testimony, and had a right to do so. As long as counsel stay in the record, and do not use invective and abuse, their argument can not be controlled.

Fourth. "The history of the world shows that a woman who has had intercourse with a man, even where she is pregnant, will lie about it, and claim it to be a swelling of the bowels." How this could have been injurious to appellant, he fails to point out. He in this case was contending that Miss Riley had had intercourse with him and was on this trial lying about it. No connection is shown as to any of these isolated objections, but we can readily understand that the district attorney must have been arguing to the jury that if Miss Riley and appellant had mutually assented to the act, as contended by appellant, she would not voluntarily have told other people about it next morning and had appellant arrested, when no other eye had seen and no other person knew of the occurrence other than herself and appellant, and this was but legitimate argument from the evidence in this case.

Fifth. "There never was a woman who went astray but some man was the cause of it." This is the last isolated remark complained of in the record, and the connection in which it was used is not stated, and appellant's objection is that it was calculated to "rile the passion of the jury." The verdict in this case is the minimum fixed by law, and if it was thus intended, it failed in its purpose.

The contention that the case should be reversed on account of the misconduct of the jury is based upon the following affidavit:

"I, C. M. Wood, upon oath state, that after the rendition of the verdict herein, I talked to juror Henry Avant, and said Henry Avant informed me that while the jury was in the jury room considering their verdict, and at a time when the jury stood eight for conviction and four for acquittal, one of the jurors stated to the other jurors that the defendant, Clarence Wood, had probably served a term in the penitentiary for horse theft and one of the jurors thereupon stated that the case against him for horse theft occurred about three years ago, and thereupon the said Henry Avant remarked to the jurors that at that time he saw the defendant down about Santa Anna, and did not think he had had time to serve a sentence for horse theft, in the penitentiary, and thereupon another one of the jurors said that he might

have gotten out at that time on a suspended sentence for horse theft; and that the jury rendered their verdict of conviction after this conversation."

When the motion for. a new trial was heard, the juror Avant testified as a witness and testified in substance to the facts as stated in the affidavit. He was the only juror placed on the stand, and he testified that this had no influence on him. Appellant, when on the witness stand, had testified he had been indicted, charged with horse theft, and had not testified to the disposition of the case. Therefore, it was but natural for the jury to discuss the fact of this indictment. It was admitted to affect his credit as a witness, and the court instructed the jury they could consider it for that purpose and no other, and the affidavit does not state that it was considered for any purpose. The indictment being a legitimate matter of discussion, it was but natural for one to state that under it he might have been convicted; another answers that could not have been true for he had seen him about this time; when another one remarked he might have gotten out on a suspended sentence. No one offered testimony that he had been convicted of horse theft, but inquiry was made, and he might have expected this when he testified he had been indicted charged with this crime some three years prior to this trial, and offered no evidence to show the disposition of that case. This was not misconduct on the part of the jury, but only a natural result from the evidence adduced.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### November 15, 1916.

HARPER, Judge.—Appellant, in his motion for rehearing, presents but few questions, the first of them relating to the testimony of Sam Cobb, the other being to the refusal of the court to give a special charge requested.

The defendant called Sam Cobb as a witness, and he testified at appellant's instance that prior to February 17, 1915, he had gone with the prosecuting witness, Miss Virginia Riley, a number of times, and that he had hugged and kissed her.

The State then cross-examined Cobb, and he testified, among other things, that appellant had told him, in speaking of Miss Riley, "It is there for me, and if I can not get it any other way, I am going to rape her."

On redirect examination Cobb testified he had not been with Miss Riley since the term of court preceding this trial, and that he did not remember being with her any time since March 14, 1914. That he could not tell what he said or appellant said on the occasion testified to on cross-examination other than that appellant said he was going to have intercourse with Miss Riley if he had to rape her. Then on recross he said, "I have never had more intimate relations with the

girl than I have told the jury about. I never told anybody that I had a hell of a time with her."

After the examination of the witness the State moved to exclude the testimony of the witness wherein he stated he had hugged and kissed the prosecuting witness, which motion was sustained by the court, and defendant reserved a bill of exceptions. In the case of Lawson v. State, 17 Texas Crim. App., 292, this court, speaking through Judge Willson, said:

"It is too well settled in this State to admit of question or discussion that, while the general character for chastity of the alleged injured female may be shown to be bad, not in justification of the offense, but as weakening the evidence of the prosecution as to want of consent, yet, it is not admissible to prove particular instances of unchastity, except with the defendant. (Pefferling v. State, 40 Texas, 486; Dorsey v. State, 1 Texas Crim. App., 33; Rogers v. State, id., 187; Jenkins v. State, id., 346; Mayo v. State, 7 Texas Crim. App., 342.) It was, therefore, not error to reject the evidence offered by the defendant to prove that Luncinda Lawson had, prior to the alleged rape, been guilty of illicit carnal intercourse with another man."

This rule has prevailed in this State in an unbroken line of decisions, and if one can not show that the prosecutrix had been guilty of illicit intercourse with another in this character of case, how much less reason is there for the contention that evidence is admissible to prove that the prosecutrix had merely kissed another man. This identical question was passed on, however, in Kearse v. State, 88 S. W. Rep., 364 (an assault to rape case) and this court held: "Appellant complains that the court erred in refusing to permit Emmett Lockhart to testify to having kissed the prosecutrix. The fact that prosecutrix may have kissed witness Lockhart would be no argument that she would kiss appellant." Appellant, however, insists that while the testimony is not admissible to in any manner affect the prosecutrix, yet as Sam Cobb, on cross-examination by the State, had testified to facts against him, it was permissible to show by him that he had kissed the girl to show his bias and interest and to affect his credit as a witness, and cites us to the case of Curry v. State, 72 Texas Crim. Rep., 463, 162 S. W. Rep., 851, wherein this court said, speaking through Presiding Judge Prendergast: "Motives which operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters. Great latitude is allowed in asking questions on cross-examination. A witness may be asked any question, the answer to which may have a tendency to affect his credibility," citing and quoting from a number of authorities. Appellant overlooks the fact that he called Sam Cobb as a witness, and not the State, and he thereby vouched for his credibility, which fact makes the Curry case wholly inapplicable. The State had made its case and rested, and appellant in making his defense called Sam Cobb as a witness. If he did not think him a credible witness, why would he call him to testify? The only instance in

which one who calls a person to testify can impeach such witness is where the opposite party on cross-examination testifies to some affirmative fact against him, which he did not know he would testify to when he called him as a witness. No such state of facts is shown by this record, but on the other hand it is shown that this was the second trial of this case, and on the former trial the witness had testified to the same facts he did on this trial on cross-examination by the State. That appellant is not allowed to impeach a witness called by him under such circumstances was settled against appellant's contention in Perrett v. State, 75 Texas Crim. Rep., 94, 170 S. W. Rep., 316; Oates v. State, 67 Texas Crim. Rep., 488; Hollingsworth v. State, 182 S. W. Rep., 465, and cases cited. One can not call a witness, knowing what his testimony will be, in order to get in otherwise inadmissible testimony by way of impeachment, when he knows the witness would testify as he did when he called him to the witness stand.

After the witness had testified on cross-examination as he did appellant on redirect examination asked Cobb "if he, Cobb, had not told appellant he had hugged and kissed the prosecutrix a thousand times, and said, 'Believe me, I have had a hell of a time with her.'" Appellant says he knew the witness would deny making such a statement, but he desired to ask the question to lay a predicate to impeach him. Again, we would say appellant called Cobb as a witness, and the State did not do so, and if he knew he would so testify, what right had he to ask a question to lay a predicate to impeach him? However, appellant seeks to bring himself within the rule that, when a part of a conversation is introduced by one side, the other party may elicit the entire conversation. Appellant, however, forgets that he testifies he had no such conversation with Cobb as Cobb testifies to, and he admits had he been permitted to ask Cobb the question Cobb would testify he had no such conversation in regard to which appellant seeks to lay a predicate to impeach him. To put the matter plainly, Cobb testifies that appellant told him, in speaking of Miss Riley, "It is there for me, and he would get it, and if he could not get it in no other way he would rape her." Appellant vehemently denies that any such conversation ever took place, and says he made no such statement nor said anything similar to it. Under that provision of the statute which provides that when part of a conversation is introduced, it all becomes admissible, appellant does not seek to show what he in fact said, nor anything Cobb said that would excuse, mitigate or justify him in using the language, if he did do so, but seeks to introduce something he claims Cobb said, which Cobb denies. As said by Presiding Judge White in Penland v. State, 19 Texas Crim. App., 365, it is only where the evidence offered is explanatory of the acts and declarations of defendant with reference to parts of the acts and declarations admitted against him, that come within the rule of article 751 (now article 811). In Kunde v. State, 22 Texas Crim. App., 65, Judge Willson says: "It is obvious that portion of said testimony offered by defendant had no

relation to that part introduced by the State,—was not necessary to make that introduced understood, nor did it in any way explain the same. It was clearly inadmissible by virtue of article 751 (now 811) and it was inadmissible under any rule of evidence." It is only when the other evidence offered would explain the part introduced or is necessary to make fully understood what has been introduced that such additional testimony becomes admissible under article 811. Ford v. State, 41 Texas Crim. Rep., 1.

The complaints as to the remarks of counsel were fully discussed in the original opinion, and we do not deem it necessary to do so again. As to the only remark complained of in the motion for a rehearing in this court, the bill shows the court withdrew it from the jury and instructed the district attorney to remain in the record. No other or additional instructions were requested by appellant, and if he did not think the withdrawal by the court and the instructions given at the time sufficient, it was his duty to ask for and secure additional instructions.

As the court had fully defined consent, as applicable to the facts in this case, as shown in that part of the charge copied in the original opinion, it was not necessary to give the special charge requested on that issue.

The motion for rehearing is overruled.

*Overruled.*