ALBERT HAROLD FLETCHER v. THE STATE.

No. 21247. Delivered November 27, 1940.
Rehearing Granted January 29, 1941.

The opinion states the case.

*Charles Tex Kurlan* and *Jno. A. Ballowe,* both of Dallas, for appellant.

*Lloyd W. Davidson, State's* Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is rape. The punishment assessed is confinement in the State penitentiary for life.

It is charged in the indictment that on the 16th day of December, 1939, the defendant, Albert Harold Fletcher, with force and arms, in the county of Dallas, State of Texas, in and upon Mary Evelyn Curtis, then and there under the age of eighteen years, did make an assault, and that the said Albert Harold Fletcher did then and there ravish and have carnal knowledge of the said Mary Evelyn Curtis she, the said Mary Evelyn Curtis, not being then and there the wife of the said Albert Harold Fletcher, etc.

The record before us discloses in substance the following facts: On the night in question, Jack Walker, Nelson Coy, Cecil Dodson and the appellant took Alberta Lowe and the injured girl, Mary Evelyn Curtis, in an automobile to a place known as Sky Harbor, where they engaged in dancing and also drank some whisky. About eleven o'clock, or somewhere near that time, they took Miss Lowe to her home and then pretended to take Mary Evelyn Curtis to her home, but before they had gone very far she discovered that they were not driving in the direction of her home and called the appellant's attention thereto, whereupon he replied that he was taking a near cut, when in fact he drove out on the Scyene Road some distance, then turned off on a dirt road and stopped the car a short distance from the Scyene Road, where they got out and the alleged offense was committed.

Appellant was the first one to have sexual intercourse with her by force and threats, and he was followed by each of the other three. After the commission of the offense, they took the girl to her home. As soon as she got out of the car, she started to go into the house and they left. She immediately reported the occurrence to her father and mother who took her to a hos-

pital where she received medical attention. Her physical condition showed that she had received rather harsh treatment at the hands of some one.

Appellant was arrested the next day at noon. He made a voluntary confession in which he admitted that he, as well as his companions, had engaged in sexual intercourse with the girl over her protest. Upon his trial he in part repudiated his confession but admitted the act of intercourse, claiming that it was with the girl's consent. There is no direct testimony from any source which questioned her previous chastity. Consequently the evidence is sufficient to sustain conviction.

Appellant's Bill of Exception No. 1 discloses that quite a controversy arose between the trial judge and the attorneys for the defendant as to what actually occurred upon the trial of the case. In the bill appellant asserts that upon his cross-examination by the State's counsel he was asked the following questions: "Where was your wife when you were arrested?" Appellant objected to this question because it was improper, was highly prejudicial and inflammatory and did not tend to prove, explain or make clear any issue in the case, which objection was overruled and the defendant was forced to answer: "I told the jury that my wife had gone to church." To this he claims he again objected for the reasons above stated. When this bill of exception was presented to the trial court he declined to approve it in the language therein expressed and appended his qualification thereto in which he states that while appellant was testifying on direct examination by his attorney he was asked what he was doing at the time he was arrested by the officers, to which he replied: "Standing in front yard talking to mother and father at the time they drove up." He was then asked: "Did you have any kind of weapon?" He replied that he had on "a white cook-apron." Then the following question was propounded: "Helping around the house?" to which he replied: "Yes, my wife had gone to church." Thereafter, when the defendant was turned over to the State for cross-examination, the District Attorney propounded to him the following question: "Where did you tell this jury under the questions of your counsel your wife was when the officers drove up there?" He replied: "She was gone to church." Then the following interrogatory was propounded: "Oh, your wife was gone to church?" To which he replied: "Yes." Then the following question was propounded: "That was on Saturday; that your first or second wife?" When the last question was propounded appellant objected and requested the court to instruct the jury not to con-

sider it. The court sustained the objection and instructed the jury to disregard the question and answer.

Appellant declined to accept the bill as qualified by the court and he filed a bystanders' bill supported by the affidavit of E. I. Steel, D. E. Harris and J. R. Bozeman. This bill was contested by the affidavit of Jack K. Tingle, the Official Court Reporter in the Criminal District Court No. 2 of Dallas County, Texas, and the affidavit of Sam Ray, Special Investigator for the District Attorney's Office in and for Dallas County, Texas. The court reporter transcribed the testimony of the appellant on cross-examination by the State which sustains the court's qualification. The statement of facts to which the appellant agreed coincides with the affidavit of the court reporter relative to what occurred at the time in question.

The affidavit of Sam Ray discloses that he made a diligent search for the three men; that he searched the telephone directory of the City of Dallas for the past eight or nine years but their names were not listed therein; that he made inquiry of the sheriff's office and talked to many men in an effort to locate the bystanders but could not find them; that he finally called upon the attorneys for the appellant and made inquiry of them as to where he might locate the men whose affidavit was attached in support of the bystanders' bill, but they did not seem to know of their whereabouts. However, the attorneys promised to make an effort to locate the men; that a few days later he again called upon the attorneys for the defendant but they did not know the address of these men, but promised to furnish this information to the investigator.

Under the record before us, we are of the opinion that the bystanders' bill was properly contested under Article 2237, subd. 9, of Vernon's Revised Civil Statutes of Texas; and the bill as thus qualified by the trial court must, under the rules of procedure approved by this court in many cases, be considered in lieu of the bystanders' bill. It is our opinion that the bill, as qualified and supported by the record, fails to disclose any reversible error. See Zachary v. State, 57 Texas Cr. 179, (122 S. W. 263).

Bill of Exception No. 2, together with the bystanders' bill and the contest thereof, reflects the same controversy between the trial court and the attorneys for the defendant as does Bill No. 1. In the bill as originally drawn by the appellant, it is stated that the State recalled Gertrude Jacobs, a character witness for the defendant, and asked her in rebuttal in effect if she was not or had not been a sister-in-law of the defendant

and that if her sister had not been a former wife of the defendant and if they were not divorced. Appellant claims that he objected to said testimony upon the ground that it was inadmissible, was improper and highly prejudicial to the defendant. The objection was overruled and the witness was required to answer:

"My sister married this defendant in 1934; they are now divorced; my sister has a 3-year old girl by him, his child."

Appellant claims he again objected to the answer for the reasons above stated, which objection was overruled by the court.

The court qualifies this bill of exception and in his qualification quotes rather at length from the testimony as thus transcribed by the court reporter:

"Q. Now, your sister married the defendant? A. Yes.

"Q. What year was that? A. 1934.

"Q. And I believe that they are now divorced—he is divorced from your sister? A. Yes, sir.

"Q. And I believe your sister has a little girl or a little boy? A. A girl.

"Q. How old is that girl? A. Three years.

"Q. That is his child? A. Yes."

The court in his qualification says that the appellant did not object to the testimony at the time it was elicited but that at the conclusion of all the evidence appellant requested a special charge instructing the jury not to consider the testimony for any purpose whatsoever. This charge was given by the court.

Appellant excepted to the qualification of the trial court and filed a bystanders' bill supported by the affidavit of the same parties whose affidavit appears in appellant's Bystanders' Bill No. 1. This bill is also contested by the affidavit of the court reporter. Hence we cannot consider the same but are relegated to the bill as qualified by the trial court and that bill, as thus qualified, fails to reflect any reversible error.

By Bill of Exception No. 3 appellant complains of the court's action in declining to submit the following special requested charge:

"I charge you as a part of the law in this case, to be taken and considered by you along with the other charges given, that the confession of a person while under arrest, or in any jail, or merely while in the custody or restraint of an officer, cannot be used in evidence against such person unless same was freely

and voluntarily made by such person without the imposition of any compulsion, restraint, threat, or fear, and then only after such person has been first duly warned by the person to whom such confession is made that he does not have to make any statement at all, and that any statement so made can be used in evidence against the person making same.

"Now, I charge you if you find and believe from the evidence that defendant, Albert Harold Fletcher, made the confession which is in evidence in this case, but that he was coerced by threats or impelled by fear of bodily harm, either or both, and that such fear was operating on his mind and conduct, and that he made such confession while under the influence of such fear, or that he had not been warned that he did not have to make any statement at all and that any statement made by him would be used in evidence against him, or if you have a reasonable doubt thereof, then such confession cannot be used in evidence against him, and you will not give any credence or weight to same in your deliberations herein, but same is entirely withdrawn from your consideration of any purpose."

The court, after instructing the jury as to the essential legal elements to constitute a statement by an accused while under arrest a voluntary confession, charged them, among other things, as follows:

"Although you may find and believe from the evidence that a written statement was made by the defendant and signed by him, yet, if you find and believe from the evidence or have a reasonable doubt thereof that he was forced or induced to make or sign said statement by reason of any threats, coercion, persuasion, statements or words on the part of the witnesses, John Daniels or Buchanan, or any other person or persons, or any other conduct or treatment on the part of the said Daniels or Buchanan, or any other person, then, you will not consider said statement for any purpose whatever."

The appellant, while on the witness-stand, admitted that he made the statement offered in evidence but contended that he was coerced in doing so. We quote from his testimony as follows:

"I was placed in City Jail about 12:10 P. M. I did not see Nelson Coy or Jack Walker there in jail for 1 1/2 hours or 2 hours, at which time I saw Walker downstairs in Buchanan's office in the basement; these officers told me that (the) other boys had made a written statement; that I didn't have to make a statement but that he would advise me to make one, the best thing for me to do; if I had known that I didn't have to

make a statement I wouldn't have made one to that effect; they carried me in.

"Officer Daniels talked to me there; he sat down in a chair and started dictating a statement which I supposed he had taken from one of the other boys; he wrote out the statement; I heard the statement read here the other day; I did not tell him what was in that statement; Daniels wrote the statement out, handed it to me and told me I could sign it or else; I had been kicked around up there before by Bob Abbott; I signed that statement in fear of bodily harm."

Mr. Abbott, who, on a former occasion had placed appellant in jail, denied that he at any time ever kicked or mistreated him.

Mr. Buchanan accompanied Mr. Daniels when he arrested the appellant on December 17, 1939. From Buchanan's testimony we quote as follows:

"I was present at the City Hall when this defendant made a written statement concerning the raping of Mary Evelyn Curtis the night before; I heard all the matters contained in that statement; Mr. Daniels accepted his statement. During all of this time I never laid the weight of a hand on this defendant nor did I threaten him; no one threatened him in my presence; Mr. Daniels did not threaten him. * * * After this statement was typed he (appellant) was given a copy and he signed it; no one forced him to sign it; Mr. Daniels did not hand him that statement and tell him to sign it or else."

Mr. Nunn, who wrote the statement with a typewriter, testified that Mr. Daniels read the written statement to the appellant but before he had finished it appellant said: "That is enough; you need not read any more; that is all I want to hear of it." He also said: "The whole thing is a mess." Mr. Daniels read the balance of it to him. "Mr. Daniels did not write the statement and lay it in front of defendant and tell him to sign it or else; that did not happen; the defendant was not forced to sign this statement; no one struck him or abused him in any way. He made it voluntarily; there was no force or violence used." Mr. Daniels denied that he abused the defendant in any manner; that he had never seen the appellant before and had no animosity for him; that at the time of the arrest he told appellant that the girl's father had been at the police station, but he did not tell him that the father of the girl had come there with a shotgun.

It occurs to us that under the instructions from the court

as above set out the appellant was fully protected in his legal rights. Consequently it was unnecessary to submit to the jury appellant's requested special charge.

Bill of Exception No. 4 also complains of the action of the court in declining to give a special requested instruction to the effect that if the officers (Buchanan and Daniels) told the appellant that two men with a shotgun were at the city hall waiting for him and that such statement by the officers produced any fear or terror in the mind of the defendant, that he would suffer bodily harm and that in a few hours thereafter the de-defendant made the confession introduced in evidence and that if at the time he so made it he was laboring under the fear or terror of bodily harm, it will be presumed that the defendant made said statement and confession by reason of fear, etc. The court declined to submit this instruction and we think properly so for the reason that we find no evidence which would justify an instruction that two men with a shotgun were waiting at the city hall for him. Moreover, the recitation in the charge that "it will be presumed that defendant made said statement and confession by reason of said fear and terror" is clearly an instruction upon the weight of the evidence or the inference to be drawn therefrom. However, this bill is qualified by the trial court who states in his qualification that in his opinion the main charge with reference to the voluntary nature of the appellant's admitted confession was fully covered in the court's instruction to the jury.

Bills of Exception Nos. 5, 6, 7, and 8 complain of the court's refusal to submit appellant's special requested instructions relative to the amount of resistance necessary on the part of the female in resisting the commission of the alleged rape. These instructions were not required inasmuch as the alleged injured female was under eighteen years of age. The act of intercourse was rape regardless of whether she resisted or consented thereto. See Art. 1183, Vernon's Ann. Texas P. C., Vol. 2; Turner v. State, 72 Texas Cr. R. 649; Kinch v. State, 70 Texas Cr. R. 419; Steptoe v. State, 115 S. W. (2d) 916.

Bill of Exception No. 10 reflects the following occurrence: Appellant in due time filed a motion for a severance in which he set forth that Nelson Coy, Cecil Dodson, and Jack Walker were also indicted for the same offense; and he asked that each of the three named persons be first tried for the reason that the State did not have sufficient evidence to justify their conviction and that their testimony would be very material to his

defense. The court qualified this bill and in his qualification states that each of the three parties filed motion for a severance and asked that each of the others be first put on trial; that by reason of the filing of said motions by each of the other defendants requesting a severance the matter of who should first be placed on trial rested entirely within his discretion. Under the facts stated the court, in directing the order of the trial of the defendants, acted in accordance with Art. 652, C. C. P. This bill is also qualified, and as thus qualified by the trial court was accepted by the appellant and he is bound thereby. See Abbott v. State, 94 Texas Crim. Rep. 31, 250 S. W. 188; Morgan v. State, 97 Texas Crim. Rep. 383, 261 S. W. 1034; Strickland v. State, 97 Texas Crim. Rep. 471, 262 S. W. 75.

Bill of Exception No. 11 complains of the following remarks of the District Attorney in his argument to the jury:

"You, Fletcher, have had lots of experience. You are the master mind. You were driving the car. You have been married twice and have two babies."

Appellant claims in his bill that he objected to that portion of the argument relating to the defendant's marriage and the fact that he had two babies. The court sustained the objection and at the request of the defendant instructed the jury not to consider said argument for any purpose. The court qualified this bill and in his qualification states that the argument of the District Attorney was not taken down by the court reporter, and the court did not recall that the District Attorney used the word "babies." This matter was brought forward in the motion for a new trial, and the State, through its District Attorney, denied that he used the words attributed to him by the appellant. The court further states in his qualification that the appellant did not object to the testimony of Gertrude Jacobs with reference to the defendant having been married to her sister, divorced and having a three-year old girl by him; that the first objection made thereto was by way of a special requested instruction to the jury not to consider the same, which requested instruction was by the court submitted to the jury. In our opinion, under the facts disclosed by this record showing that the appellant was married, that he had a child—a girl three years of age, the argument could not have been any more prejudicial to the defendant than the testimony which was introduced without objection.

Appellant excepted to the court's qualification and filed a bystanders' bill supported by the affidavit of the same three bystanders named in the Bystanders' Bills of Exception Nos. 1

and 2. This bystanders' bill is also contested by the State. Hence the court's bill, as qualified, must prevail under the established rules of this court.

Appellant next complains of the action of the trial court in overruling his motion for a new trial in which he has brought forward each and every complaint disclosed by the bills of exception herein discussed, and in addition thereto, that the jury in their deliberation disregarded the instructions of the court not to consider the fact that the appellant had been married twice and had two children—one by his former wife and one by his present wife; and also upon the ground of newly discovered evidence as disclosed by the affidavit of Dr. Harry G. Wilson which is attached to the motion for a new trial and whose name appeared on the back of the indictment as a witness.

It was charged in the motion for a new trial that Dr. Wilson would have testified that he examined the prosecutrix after midnight on December 16, 1939, at the request of her parents; that the examination of her privates disclosed the fact that a short time previous to the examination she had had intercourse with some male person; that he also found an old rupture of the hymen and old scar tissues which had been made by the entrance of some object into her privates. The State contested this motion and each and every ground therein set out, and especially the misconduct of the jury as charged in the appellant's motion. The court heard testimony relative thereto which showed that none of the jurors in their deliberations discussed the fact that the appellant had been married twice and had two children; that one of the jurors at one time made some reference thereto but he was immediately stopped and admonished that they could not consider the same, and there the matter rested. No further reference thereto was thereafter made by any of the jurors. Most of the jurors, however, testified that they did not even hear any such remark or reference to the appellant being a married man.

With reference to the newly discovered testimony, it occurs to us that since the name of the witness, Dr. Wilson, appeared on the back of the indictment which was returned by the grand jury on the 30th day of December, 1939, and inasmuch as the trial of the case did not begin until about the 24th day of February, 1940, the appellant and his attorneys had ample time in which to have interviewed the doctor and ascertained what his examination of the injured girl disclosed. It is obvious that the appellant and his attorneys failed to exercise that degree of diligence which the law requires in order to entitle

them to a new trial on the ground of newly discovered evidence. See Art. 753, Vernon's Ann. Texas C. C. P., Vol. 3, p. 13, note 25; also 140 Cumulative Supplement, pp. 9 and 10, note 28. See also Burkhart v. State, 127 Texas Cr. R. 1.

Relative to the allegation of newly discovered evidence, the State offered Gene Bailey, Assistant District Attorney in and for Dallas County, Texas, who testified that he participated in the trial of the defendant; that near the conclusion of the trial he talked to the appellant's attorneys and in that conversation he told one or the other of said attorneys, or perhaps both, that he was not going to use Dr. Wilson as a witness in behalf of the State but that if they desired to use him they might do so; that he could be found any time at the Emergency Hospital in the City of Dallas. This testimony on behalf of the State is uncontroverted by the appellant or his attorneys.

It occurs to us that under the facts developed upon the hearing of the motion for a new trial the court was justified in finding as a fact that the jurors did not discuss or take into consideration the fact that appellant was a married man and had two children; and the court was also justified in concluding that the appellant and his attorneys had failed to exercise that degree of diligence required of them by law to entitle them to a new trial upon the ground of newly discovered evidence. Hence we overrule the appellant's contentions.

After having carefully reviewed each and every other complaint relating to alleged errors in the trial of the case, we have reached the conclusion that no reversible error is presented.

From what we have said, it follows that the judgment of the trial court should be in all things affirmed and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant has filed a rather lengthy motion for a rehearing in which he contends that the trial court committed fundamental error in submitting the case to the jury as one of rape on a female under the age of consent because the indictment charged the defendant with rape by force on a female under the age of consent, thereby submitting to the jury an entirely different and distinct offense. Omitting the formal parts, the indictment

reads as follows:

"* * * that one Albert Harold Fletcher on the 16th day of December in the Year of our Lord One Thousand Nine Hundred and 39, with force and arms, in the County and State aforesaid, in and upon Mary Evelyn Curtis, a female, then and there under the age of eighteen years, did make an assault, and the said Albert Harold Fletcher did then and there ravish and have carnal knowledge of the said Mary Evelyn Curtis, the said Mary Evelyn Curtis not being then and there the wife of the said Albert Harold Fletcher, etc."

We do not deem it necessary to enter upon an extended discussion of the question here presented. A reference to the case of Patton v. State, 287 S. W. 51, seems decisive of the question. We quote from the opinion in that case as follows:

"In the indictment it is charged that the appellant 'did make an assault upon and did then and there ravish and have carnal knowledge,' etc. The prosecutrix was averred to be under 15 years of age. Under this indictment, a conviction could be sustained upon proof of either rape by force or by acquiescence of a female, whose age was below 18 years. See Buchanan v. State, 41 Tex. Cr. R. 127, 52 S. W. 769. Such an indictment, by the use of the word 'ravish,' charges rape by force, but the additional words, 'have carnal knowledge,' embraced in the same count, permits proof of the other phases of rape. See Dyer v. State, (Tex. Cr. App.) 283 S. W. 820."

Appellant re-asserts the contention that the trial court erred in declining to give a peremptory instruction to the jury to return a verdict of not guilty. He claims that he established by circumstantial evidence the unchastity of the prosecutrix, in this: That he proved she drank whisky and permitted young men to kiss and hug her. The prosecutrix testified that she was a virgin at the time that she was assaulted by appellant; that she had never had sexual relations with any man prior to the time in question. Consequently, appellant was not entitled to such an instruction even though the issue of her unchastity might have been raised. However, we do not believe that any female who may take a drink of intoxicating liquor and even kiss or permit friends of the opposite sex to hug and kiss her would be sufficient to raise the issue of her previous unchastity. To so hold might cast suspicion upon a great number of our virtuous women and besmirch their good character. We think this question has been fully and definitely settled by the opinion rendered by this court in the case of Satterwhite v. State, 23 S. W. (2d) 356, in which Judge Lattimore, speaking for the

court, on State's Motion for Rehearing, said:

"It seems to the writer that it would be far better to adhere to the long-established rules of procedure in Texas in such regard, than fly to speculative ills we wot not of. Young America in 1929 seems not as adverse to hugging and kissing friends of the opposite sex, as may have once been the case; but this would hardly justify the legal conclusion that such conduct tends to show lack of chastity. Nor is the fact of one becoming under the influence of strong drink, even if deplorable, to be held in law to involve sexual or other immorality, or even to tend in that direction.

\* \* \*

"In passing we note that in the case last mentioned (Wood v. State, 80 Tex. Cr. R. 409, 189 S. W. 474), the court below excluded the testimony of a witness for the defense who swore that he hugged and kissed prosecutrix, and this court upheld said action of the trial court and cited Kearse v. State, (Tex. Cr. App.) 88 S. W. 364, wherein the court below refused to allow a defense witness to swear that prosecutrix kissed him; this court observing that from such proof it would not follow that she would allow another man to kiss her."

Appellant next complains because we declined to consider his Bystanders' Bill of Exception No. 11, wherein he excepted to the following remarks by the District Attorney in his argument to the jury:

"You Fletcher, have had lots of experience. You are the master mind. You were driving the car. You have been married twice and have two babies."

This bill was contested by the State, but appellant, now for the first time, asserts that the contesting affidavit was not filed within ten days after the Bystanders' Bill had been filed as required by Article 2237, sec. 9, Revised Civil Statutes. This matter was not called to our attention on the original submission and it escaped our notice. A re-examination of the record discloses the correctness of the appellant's contention. Hence the contesting affidavit cannot be considered and we are constrained to decide the question presented upon the merits of the bystanders' bill. It is true that the record shows that Gertrude Jacobs, a witness for appellant, testified to his general good reputation; and on cross-examination she was asked by the District Attorney if her sister didn't marry appellant and if she didn't have a three-year old child, a girl, by him, which questions were answered in the affirmative. However, at the

conclusion of the testimony appellant requested the court to withdraw said testimony from the jury and instruct them not to consider it for any purpose, which the court did. It is our opinion that ·by so doing the court committed an error against the State because it had a right to show, if it could, the interest or motive of the witness in the result of the trial. The witness' niece was the appellant's child and the odium which flowed from his conviction would cast its shadow upon the child. Nevertheless, when the court withdrew this testimony from the jury, the case stood as if it had not been introduced. Therefore, the argument of the District Attorney was tantamount to bringing to the attention of the jury, by way of argument, unsworn testimony which was not before them and which was hurtful and prejudicial, requiring a reversal of the judgment. Prosecuting attorneys in their argument should confine themselves to a discussion of the evidence admitted under the ruling of the court and legitimate deduction therefrom. When testimony has been withdrawn from the jury the State's attorney should refrain from commenting thereon. See Kerr v. State, 128 Texas Cr. R. 373; Sarli v. State, 80 Texas Cr. R. 161; Bradley v. State, 72 Texas Cr. R. 287; Cannon v. State, 84 Texas Cr. R. 479.

The motion for rehearing is granted, the order of affirmance is set aside and the judgment is now reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.