### ELBERT JACOBS v. THE STATE.

#### No. 1702. Decided April 1, 1912.

**1.—Rape—Evidence—Declaration of Third Parties—Res Gestae.**

Where, upon trial of rape, the occurrence testified to by the State's witnesses happened soon after the alleged rape and before defendant and prosecutrix had separated thereafter, in the presence of the defendant, there was no error in admitting in evidence the declarations of third parties at that time with reference to the fact that prosecutrix was trying to get away from defendant and the latter was attempting to take her away and force her to marry him.

**2.—Same—Evidence—Outcry by Prosecutrix.**

Where, upon trial of rape, it was shown by the evidence that the prose-

1912.] JACOBS v. THE STATE. 147

cutrix made an outcry or attempted statement with reference to the assault upon her by the defendant, and that this was the first time she had been placed where she could make an outcry after the alleged rape and before the parties had separated, the defendant attempting to further force her to marry him, there was no error in admitting said testimony.

#### 3.—Same—Evidence—Telephone Message.

Where, upon trial of rape, the defendant claimed that prosecutrix had promised to marry him and had consented to the act of sexual intercourse and had done so before, which prosecutrix denied and that she had shunned defendant on all occasions, there was no error to admit testimony that the witness heard prosecutrix answering defendant over the telephone and that she said "no" all along.

#### 4.—Same—Evidence—Physical Examination.

Where, upon trial of rape, prosecutrix testified that defendant had forced her under circumstances that would constitute rape and overcame her by physical strength, there was no error to admit testimony showing the physical condition of prosecutrix the next morning after the alleged outrage and that she was taken to a physician, etc.

#### 5.—Same—Evidence—General Reputation—Bill of Exceptions.

Where, upon trial of rape, defendant claimed that he had been having intercourse with prosecutrix before the alleged rape and that others had such sexual intercourse with prosecutrix, there was no error to admit in evidence her general reputation for virtue and chastity.

#### 6.—Same—Evidence—Declarations of Defendant.

Upon trial of rape, where defendant had denied the alleged offense, and there was evidence that he called the prosecutrix over the telephone some hours prior to the alleged offense, there was no error in admitting in evidence the declarations of defendant to a third party with reference to said telephone message.

#### 7.—Same—Evidence—Declaration of Third Party—Res Gestae.

Where, upon trial of rape, the declarations and acts of third parties were admitted as res gestae, there was no error.

#### 8.—Same—Evidence—Declarations of Prosecutrix.

Where, upon appeal from a conviction of rape, it appeared that the defendant was in position to hear the declarations of prosecutrix with reference to taking a walk on the night of the alleged offense—the defendant having followed prosecutrix and taken her from her escort and assaulted her—there was no error in admitting these declarations in evidence.

#### 9.—Same—Statement of Facts—Motion for New Trial.

Where the statement of facts growing out of the motion for new trial was not filed until after the adjournment of the court, the same can not be considered on appeal.

#### 10.—Same—Sufficiency of the Evidence.

Where, upon trial of rape, the testimony was sufficient to sustain a conviction, there was no reversible error.

Appeal from the District Court of Smith. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of rape; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—The jury allotted appellant twenty-five years in the penitentiary under a charge of rape.

There are several bills of exceptions in the record, several of which may be grouped.

1.   Bill of exceptions No. 1 shows Gullick testified that he heard prosecutrix crying and trying to talk, and heard defendant telling her to hush or shut up, something of that kind. "I asked what was the matter and the defendant said it is nobody's business or none of your business. I said do you know who you are talking to and snatched the defendant around and he then said it don't make any difference. I said, yes it does, too. She (the prosecutrix) was trying to talk and the defendant told her to hush or shut up and I said well come on. She then said something about a gun and I made a rough quick search of the defendant and found no gun, and I said to the defendant, well if you won't let her talk here we will let her talk in court, and I then carried the defendant to jail."

.The witness Thompson testified, as shown by bill No. 5, "defendant dragged prosecutrix across the sidewalk on the south side of the public square, and when she hit the pavement she hollered for help and these little Syrian women come out there; they were talking so fast I don't know what they were saying, I could not understand them." This was excepted to by appellant. This and the former bill were qualified by the judge as follows: "The occurrence testified by the witnesses Thompson, Gullick and Davis happened soon after the alleged assault and before defendant and prosecutrix had separated after the assault, in the presence of defendant, was a part of the res gestae, showed defendant's state of mind, also was in the nature of an outcry by prosecutrix. By a reference to the statement of facts it will clearly appear that this testimony was admissible."

There is another bill reserved to the testimony of a witness named Davis in connection with the same matter. It is unnecessary, we think, to recapitulate what is in the other bill. We are of opinion this testimony was clearly admissible, especially in view of the qualification by the judge.

Without going into a detailed statement of the evidence, which is very voluminous, it will suffice, perhaps, in this connection, to state that on the same night of the occurrences mentioned in the bills, the State proved by prosecutrix that appellant had forced intercourse with her down in the woods, a little southwest of the hospital building of the Cotton Belt Railroad in the western edge of the city of Tyler, and that he had kept her under his authority and control until he reached the point mentioned by the witnesses in the city of Tyler; that he had employed a hack at that point for the purpose of conveying her with him to secure a marriage license and the services of a justice of the peace to perform the ceremony in the consummation of

a marriage between them. Prosecutrix was protesting against this, and these occurrences mentioned in the bills happened. Under this condition of the record there is, in our judgment, no valid reason why this evidence was not admissible before the jury. This was the first time that prosecutrix had been placed where she could make an outcry or statement to anyone, and even if it had not been, it was a part of the purposes shown by the evidence of appellant after having forced the woman into intercourse, to further force her to marry him on this particular night. See Thompson v. State, 11 Texas Crim. App., 31; Johnson v. State, 21 Texas Crim. App., 368; Castillo v. State, 31 Texas Crim. Rep., 145. We are of opinion also it was admissible under Sharp v. State, 15 Texas Crim. App., 171; also under Grimes v. State, 64 Texas Crim. Rep., 64, 141 S. W. Rep., 261.

2. There are two other bills, Nos. 2 and 3, which complain of the admission of the testimony of J. R. Davis; in substance, that defendant telephoned to Davis' store and got him to have prosecutrix to come to the telephone on the afternoon and prior to the alleged offense at night. Appellant told Davis his name, and Davis recognized his voice. Davis testified that he heard what prosecutrix said to defendant over the 'phone, and that she said, "No, No, No," all along; that after she left the telephone she told him not to call her to the telephone for defendant any more because she did not care anything for it at all. The court qualified this bill by stating "the defendant claimed that prosecutrix had promised to marry him, had consented to the act of sexual intercourse with defendant on a number of occasions and that his company was always welcomed by her; she the prosecutrix had testified to the contrary and claimed she had avoided and shunned defendant on all occasions; defendant claimed that the conversation over the phone was with her consent and willingly engaged in by her; this she denied and this testimony was admitted on this issue." We are of opinion the court was correct in admitting this testimony under the above statement.

3. Bill No. 7 is to be disposed of under the qualification placed to bill of exceptions No. 5 by the court, unnecessary here to mention.

4. Bill No. 8 recites that Adline Thomas, mother of prosecutrix, was permitted to testify that John Kennedy brought her, prosecutrix, home to her the morning after the outrage is alleged to have been committed; they got home before day; that she examined her daughter's face and body to ascertain if there were any bruises on her, and found bruises on her neck on the right side; her face was bruised up; her body was bruised up, and blue places were found under her clothes where he had beaten her. That she made a liniment and rubbed her mightily. Prosecutrix was unable to be up; that she carried her to Dr. Lacy on that same day, and that no doctor had attended her before she brought her to Dr. Lacy; that the doctor came out to see her; that she was confined to her bed off and on two or three weeks. Objection was urged to this, that it was irrelevant and not a part of the

res gestae; that the same occurred when defendant was not present and knew nothing about it, and that the same happened the following day after the alleged assault the previous night. These objections were overruled, and, we think, properly. The condition of the prosecutrix early the next morning and the day following was admissible in connection with the other facts for several reasons. It bore upon the question of force and consent. Prosecutrix testified that he had forced her, under circumstances that would constitute rape, using his physical strength, beating her, and also used a pistol to force his desires. This assault occurred something like half after 10 or 11 o'clock at night. Her physical condition early the next morning are physical facts that might be proper evidence in the case.

5. Bill No. 9 recites that Hattie Bledsoe testified: "I have never heard anything of her (meaning prosecutrix) general reputation for virtue and chastity till this happened. It was good so far as I know. She was on the delicate order." Objection was urged to this because there was no testimony by any witness for the defendant to call for this testimony in rebuttal; and the same was irrelevant and immaterial and prejudicial. These objections were overruled. These grounds of objection can not be treated as matters of fact simply because the court approved the bill. They are not recited as matters of fact, but simply stated as grounds of objection. If we go to the statement of facts we discover that the chastity of the prosecutrix was one of the issues of the case, appellant claiming that he had been having intercourse with her and that others had been having intercourse with her. This she denied, and there is a very considerable amount of testimony in regard to this phase of the case. This authorized the evidence showing her general reputation as being good for chastity, and there is quite a lot of this testimony in the record from different witnesses. This testimony, we think, was clearly admissible. See Wilson v. State, 17 Texas Crim. App., 525.

6. It is also objected in bill No. 10 that J. R. Davis was permitted to testify to the general reputation of prosecutrix for chastity. This was admissible also under the reasons above stated.

Bill No. 10 also reserved exception to the court's action in permitting the witness to testify that he had a conversation with defendant after the alleged offense at a bridge near his, Davis', store, and the conversation was relative to this case. The bill sets out the conversation that occurred between them. Defendant, as shown by the bill, was complaining that he, appellant, had been informed that Davis was going to testify that he, appellant, phoned to his house during the day before the offense is alleged to have been committed. Witness told appellant that he did not say that at all, and was going to testify to but one thing, and that was about appellant phoning the prosecutrix that evening and before the commission of the offense at night, and appellant said, "Well, if that is all, there ain't much in that." Thereupon they discussed the matter for a while as to what time it was.

Appellant said it was in the summer time; witness said it was in the spring, and defendant "came to the position" that it was in the spring, and then he said, "That won't be much, that don't amount to much," and after while he said, "Yes, that is some evidence." This was about the phone conversation that the witness mentioned at the time that appellant wanted to know whether prosecutrix had gone home. The grounds of objection stated are as follows: Because proper predicate had not been laid and was not in rebuttal of any testimony brought out by defendant, and calculated to injure the rights of the defendant, etc. This testimony was admissible for several reasons. It was appellant's view of the matter about which Davis had testified with regard to appellant calling the girl over the telephone at Davis' place. It was an admission on his part that he was the party at the other end of the line talking with the girl, and showed knowledge of a participation in the conversation with the girl, and was corroborative of the girl's testimony for what it was worth. The court qualifies this bill by stating this testimony was in rebuttal of defendant's testimony, and after he had testified that prosecutrix consented to this and many other acts of intercourse and had proved by other witnesses acts of intercourse with her. The testimony, as shown by this bill above as to the general reputation of prosecutrix, and as to the conversation between Davis and appellant, was properly admitted.

7. Bill No. 11 was reserved to some statements and matters occurring in the presence of the Syrian women at the ice cream parlor owned by them, at the time testified by Thompson and Gullick. It is unnecessary to repeat the contents of the bill of exception. For the reasons stated in regard to the previous bills this testimony was admissible.

8. Bill No. 12 recites that the prosecutrix was permitted to testify that appellant was in the room talking to her brother-in-law, when Earnest Johnson and she left the gallery going walking. Earnest and prosecutrix were on the front porch, and appellant and her brother-in-law were in the room, just a wall between them and the door was open, and her sister was in the next room to the front room in which appellant was; prosecutrix went in where her sister was and spoke to her in a loud tone while she was in the room with her sister. She said she spoke loud enough for defendant in the other room to have heard it, and told her sister that she was going walking a while, etc. This was objected to because hearsay, irrelevant and immaterial, because the State had not shown that the defendant heard the conversation, or was close enough to hear it. These objections were overruled. The grounds of objection can not be treated as matters of fact. If, as a matter of fact, appellant was in such position he heard this, the conversation, it was admissible. We are of opinion that in view of the condition of the bill of exceptions, that the defendant is shown to have heard it. The brother-in-law sitting with appellant heard the prosecutrix statement. Earnest Johnson and prosecutrix immediately left for the stroll, and appellant left a few minutes afterward, and after

they had passed the hospital and approached the woods, appellant confronted them and ran Johnson away, took the girl down in the woods, and, under her testimony, by force and threats and the use of a pistol, etc., had intercourse with her. We are of opinion that as the bill is presented, the court was not in error in admitting this testimony.

9. A statement of facts accompanies the record in regard to a statement in the motion for new trial, that appellant was placed in jail during the noon hour pending argument in the case; that he was under bond, and that this was a deprivation of his rights; that the officer had no right to arrest him and put him in jail. This statement of facts was not filed until December 12, the court having adjourned on the 14th of the previous October. Under the decisions this evidence can not be considered. Appellant did not embody this in a bill of exceptions; simply embodied it in a statement of facts.

10. Appellant insists that the evidence is not sufficient to justify the verdict. The jury saw proper to believe the testimony of the prosecutrix. Her testimony makes out a clear case, and she is corroborated by quite a number of witnesses and attendant facts which amply supports the verdict of the jury. His testimony is that he found Johnson and the girl in the woods; that Johnson had pulled off his coat and spread it down and the girl was sitting on the coat, conveying the idea that they intended to have sexual intercourse, and that she made Johnson leave when appellant came upon the scene, and he testified they there had intercourse, and it was by her consent. He testified also to having had intercourse with her previously, all of which she denied. The testimony in regard to these matters is quite voluminous, but if the State's evidence is to be credited, appellant was guilty, as found by the jury, of having ravished the girl by both force and threats, or by threats and force conjointly.

Believing there has been no such error committed in the trial of the case as would justify a reversal of the judgment, it is ordered that it be affirmed.

*Affirmed*