James E. BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–84–0260–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 16, 1985.

Rehearing Denied June 13, 1985.

---

William W. Vance, Bryan, for appellant.

Bill Turner, Rodney Boyles, Bryan, for appellee.

Before EVANS, C.J., and COHEN and DUNN, JJ.

## OPINION

DUNN, Justice.

This is an appeal from a conviction for the offense of rape. Trial was to a jury who found appellant guilty, found the enhancement paragraph of the indictment against him to be true, and assessed punishment at 35 years imprisonment.

Complainant testified that she received a phone call on Friday, August 26, 1983, from an individual calling himself "Sean." The caller inquired about the night-life in Bryan-College Station and offered to sell her a coupon booklet. The parties conversed for approximately 45 minutes, principally about their respective personal interests and hobbies. Complainant received several more calls from "Sean" over the weekend, in which he attempted to arrange a meeting with her. On Sunday night, August 28, 1983, "Sean" succeeded in convincing complainant to come to his apartment. She testified that she arrived there about 9:30 p.m., and was shocked to find that "Sean" was a black man. He pulled complainant into his apartment, and when she screamed, stated, "I don't go for that." He then forced her to have sexual intercourse with him.

Appellant, taking the stand in his own defense, testified that complainant had come to his apartment on the evening of their initial telephone conversation, at which time they drank wine and talked for about an hour. He said that complainant then went home, leaving behind her address and telephone number. Appellant

testified this was the last time he saw complainant before the trial.

A rape kit established that complainant had sexual intercourse during the 24 hours in question. No witnesses were brought forward who could place either appellant or complainant at the scene of the alleged offense on Sunday night.

Appellant contends in his first four grounds of error that the trial court reversibly erred in overruling his challenges for cause to four prospective jurors, Mable R. Pearce, Donald C. Campbell, Willie Mae McConnell, and Julius Skrivaneck. We will address these four grounds of error together.

The record reflects that appellant properly preserved error when his challenges to these jurors were denied. *Williams v. State*, 565 S.W.2d 63, 65 (Tex.Crim.App. 1978). On appeal, he contends that he was forced to accept four objectionable jurors whom he would have stricken with an additional peremptory challenge due to their inability to consider the full range of punishment for the offense. During initial voir dire, twelve prospective jurors, including the four named above, indicated an unwillingness to assess the minimum punishment for the offense of rape. Each of these prospective jurors was separately questioned outside of the hearing of the venire, and the trial judge excused eight of them, but refused to excuse the four jurors named above.

■ The trial court's decision to overrule a challenge for cause must be reviewed in light of all the answers that the prospective juror gave during voir dire questioning. *Anderson v. State*, 633 S.W.2d 851, 854 (Tex.Crim.App.1982). A careful review of the voir dire testimony of the four prospective jurors complained of, i.e., Pearce, Campbell, McConnell, and Skrivaneck, reveals that each could consider the full range of punishment for the offense. Venireperson Pearce, in addition, went so far as to say that she would "serve to the best of my ability and try to remove any of this and listen to only what I hear, to make my decision. I consider myself a pretty intelli-

gent person. So for that reason, I am going to remove any preconceived ideas that I have." Venireperson Campbell, when asked if he could consider the full range of punishment, answered in no uncertain terms, "Right." When asked the same question, Venireperson Skrivaneck answered, "Right, and base it on the facts," and Venireperson McConnell stated that she would listen to all the evidence and not close her mind to the lower end of punishment or the upper end of punishment.

■ We find that the record does not support appellant's contention that the four jurors named on appeal could not give the minimum punishment and were subject to challenge for cause, pursuant to Tex.Code Crim.P.Ann. art. 35.16(c)(2) (Vernon 1966). Appellant's first four grounds of error are overruled.

Appellant's fifth ground of error asserts the trial court committed reversible error by failing to grant appellant's motion to quash the enhancement paragraph of the indictment, due to a fatal variance between the date of the prior conviction as alleged and that date as proven.

■ Upon comparison with the penitentiary packet submitted at the punishment phase of trial, the sentencing date alleged in the indictment was shown to be incorrect. However, the proof revealed the necessary succession of offenses and final convictions. It is well settled that it is not necessary to allege prior convictions for the purpose of enhancement with the same particularity as must be used in charging the original offense. *Cole v. State*, 611 S.W.2d 79 (Tex.Crim.App.1981).

Appellant cites *Hollins v. State*, 571 S.W.2d 873 (Tex.Crim.App.1978), in which the Court of Criminal Appeals affirmed a judgment and stated that allegations of prior convictions for purposes of enhancement *should* include the name and number of the court in which conviction was obtained, the time of the conviction, and the nature of the offense. However, the Court also noted that it is not necessary to allege

the dates on which the convictions became final so long as the proof at trial showed the necessary succession of offenses and the fact that the convictions for each became final before the occurrence of the next offense. *Burton v. State,* 493 S.W.2d 837 (Tex.Crim.App.1973). In the case at bar, the record clearly shows that the previous conviction became final on January 4, 1980, well before the offense in question occurred.

■ Appellant failed to show that the error in the sentencing dates shown in the indictment prevented him from finding the conviction record or from making adequate preparation for trial. *Cole, supra; Hollins, supra.* Appellant's fifth ground of error is overruled.

Appellant's sixth ground of error avers the trial court committed reversible error by overruling appellant's objection to the admission of evidence concerning trauma suffered by complainant as a result of the rape.

■ In order to establish appellant's guilt of the offense of rape, the state was required to prove the allegations of the indictment that appellant had sexual intercourse with complainant "unlawfully, intentionally, and knowingly, by threats and force, and *without her consent.*" (Emphasis added.) Contrary to appellant's argument, the issue of consent is not only raised by the evidence, but was emphasized by the particular circumstances of the case. Indeed, the issue of consent was the central, if underlying, issue since the evidence showed that complainant voluntarily presented herself at appellant's apartment. Thus, the issue of lack of consent was ever present during the state's case-in-chief, and the state was entitled to offer relevant proof tending to show that complainant had not consented to engage in the act of sexual intercourse.

In an enlightened society, there is no longer a question that sexual intercourse perpetrated by threats and force is a violent act. Our courts have consistently admitted evidence showing the injuries sustained by the victim as a result of violence. *Hafti v. State,* 487 S.W.2d 745 (Tex.Crim. App.1972); *Robinson v. State,* 457 S.W.2d 572 (Tex.Crim.App.1970); *Maxwell v. State,* 362 S.W.2d 326 (Tex.Crim.App.1962); *Mack v. State,* 307 S.W.2d 588 (Tex.Crim.App. 1957). Indeed, proof of the injuries sustained by a victim may be the best evidence of an assaultive crime. *Levell v. State,* 453 S.W.2d 831 (Tex.Crim.App.1970). Similarly, our courts have long recognized that evidence of subsequent emotional distress and shock may be properly considered in determining whether sexual intercourse occurred as a result of threats or force. *Wood v. State,* 80 Tex.Crim. 398, 189 S.W. 474 (1916); *Burge v. State,* 73 Tex.Crim. 505, 167 S.W. 63, 66 (1914).

In *Wood,* the court held there was no error in permitting testimony that the complainant was in a nervous condition for some time after the rape and that she continued to have nervous crying spells for a month or more. The court found this to be proper evidence of the severity of the shock to the victim's mental and physical nature. 189 S.W. at 476–77.

■ There is no set criteria to determine whether force has or has not been applied in any particular rape case, and the facts of each individual case must determine the issue. *Brown v. State,* 576 S.W.2d 820, 823 (Tex.Crim.App.1978); *Bundren v. State,* 152 Tex.Crim. 45, 211 S.W.2d 197 (1948). The nature and seriousness of the victim's injuries are admissible as a part of the state's case. *Maxwell,* 362 S.W.2d 326.

Emotional scars are much more difficult to prove than physical scars. The proof required to show "emotional trauma" looks to the effect of the trauma on the complainant as evidenced by her physical manifestations. The testimony of the state's expert witness, Dr. Simpson, which was admitted without objection, tied complainant's emotional trauma to the rape "as a direct reaction to a specific traumatic event." The probative force of such evidence sheds light on the element of consent, as well as the severity of the force used by appellant.

■ It was the duty of the trial court to weigh the probative value of the evidence of complainant's emotional trauma against the prejudicial effect of its admission, and in the exercise of its discretion, to decide whether the evidence should be admitted or excluded. *See Bush v. State*, 628 S.W.2d 441, 444 (Tex.Crim.App.1982); *Ruiz v. State*, 579 S.W.2d 206 (Tex.Crim.App. 1979). Unless the trial court abused its discretion, this court will not disturb its judgment. *Williams v. State*, 535 S.W.2d 637 (Tex.Crim.App.1976); *Knight v. State*, 635 S.W.2d 650, 652 (Tex.App.—Fort Worth 1982, no pet.). Under the particular circumstances presented, we conclude that appellant has not demonstrated that the trial court abused its discretion in admitting such evidence.

■ We are further of the view that any error in the admission of such testimony was waived and/or cured by defense counsel's failure to object to similar testimony later elicited. Although defense counsel did timely object to certain portions of the testimony regarding complainant's emotional injuries when it was first elicited, he did not obtain a running objection to such testimony, and complainant later testified, without objection: that she had attempted suicide twice, the first time a month after the rape; that she was hospitalized both times; and that she had had continuing counseling since the rape. It is defense counsel's responsibility to object every time allegedly inadmissible evidence is offered, and when counsel objects to certain inadmissible testimony, but then permits similar evidence to come in without objection, the complaint is deemed cured. *Moore v. State*, 675 S.W.2d 348, 350 (Tex. App.—Fort Worth 1984, no pet.); *e.g., Brown v. State*, 640 S.W.2d 275, 280 (Tex. Crim.App.1982); *Brasfield v. State*, 600 S.W.2d 288, 296 (Tex.Crim.App.1980).

We overrule appellant's sixth point of error.

Appellant's seventh ground of error asserts the trial court reversibly erred in overruling appellant's motion for mistrial after the state failed to reveal exculpatory evidence in violation of the discovery order entered by the trial court.

The evidence complained of by appellant consisted of a police report made as a result of the photograph identification procedure, which indicated that complainant identified photo # 4 as the man who had raped her. Appellant's photo was # 3. There is no evidence to suggest that the police or the state willfully suppressed this report, or that counsel for the state was aware of the discrepancy.

■ Appellant argues that reversible error occurs when the prosecutor negligently or inadvertently fails to disclose evidence which may exonerate the accused or which may be of material importance to the defense, even though not offered as testimony at the trial, citing *Means v. State*, 429 S.W.2d 490 (Tex.Crim.App.1968). However, the test to determine if appellant has been denied due process of law is whether the withheld evidence is material, so that its omission deprives the accused of a fair trial. *Fitzpatrick v. State*, 632 S.W.2d 935 (Tex.App.—Fort Worth 1982, pet. ref'd).

■ Here, Officer Chavarria, who was assigned to the entire investigation of this case, testified that he was present at all times during the photograph identification procedure and that complainant never identified anyone except appellant. It is established in the record that the "exculpatory evidence" consisted of a typographical error, and as such, could not have exonerated appellant, been of material importance in his defense, or affected the outcome of the trial. Appellant's seventh ground of error is overruled.

Appellant's eighth ground of error contends the trial court reversibly erred in overruling appellant's objection to the admission of a writing by appellant which was withheld by the state in violation of the discovery order entered by the trial court.

The state attempted to prove, both by testimony and by introduction of physical evidence, that appellant had a continuing practice of sexually soliciting women over

the telephone. Pages from a telephone book, which contained marks made by appellant next to women's names, were admitted into evidence. Appellant contends that the state violated the discovery order by withholding this telephone directory.

The telephone book was given to counsel for the state by a defense witness after the trial had begun. Appellant had been living with this witness at the time of the alleged offense and the telephone directory was her property. This witness was hostile to the defense and informed defense counsel, before trial, that she would tell the district attorney's office about the existence of the telephone book; at that time, the witness also made defense counsel aware of the incriminating nature of appellant's marks in the telephone directory. She did not inform defense counsel that she would turn the directory over to the district attorney's office. Defense counsel chose not to ask his witness for the telephone book and run the risk of antagonizing her further.

■ The purpose of discovery is to prevent surprise at the trial. Under the above circumstances, appellant cannot claim that he was surprised by the production of this evidence. Although the state had a continuing duty under the discovery order, *Granviel v. State*, 552 S.W.2d 107 (Tex.Crim.App.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977), any error shown here is harmless. Appellant's eighth ground of error is overruled.

The appellant's ninth ground of error asserts the trial court committed reversible error by overruling appellant's objection to the admission of evidence of an extraneous offense.

During trial, the state called a witness who testified that she had received several phone calls of a personal nature from appellant. The witness eventually agreed to meet appellant, but left without getting out of her car when she saw that he was a black man.

■ This testimony is not evidence of an extraneous offense. Appellant had committed no offense in calling the witness on the telephone, and the witness testified that she "did not think nothing of it" when defense counsel asked why she met with appellant after he had told her he was masturbating during one of their conversations. However, the testimony of this witness was admissible to impeach appellant's testimony that he did not attempt to solicit women by use of the telephone and that he telephoned them only in the course of his employment with a telephone marketing service. Appellant's ninth ground of error is overruled.

■ Appellant filed five pro se grounds of error, in addition to the brief filed by his counsel on appeal. There is no right in Texas to hybrid representation. *Landers v. State*, 550 S.W.2d 272, 280 (Tex.Crim. App.1977) (op. on reh'g); *Wendt v. State*, 664 S.W.2d 730 (Tex.App.—Waco 1983, pet. ref'd). We thus decline to review the pro se grounds of error.

The judgment of the trial court is affirmed.

COHEN, J., dissents.

COHEN, Justice, dissenting.

I respectfully disagree with the court's overruling of the sixth ground of error, which complains that the trial court erred in admitting evidence concerning the victim's two suicide attempts, weight gain, job loss, fear of being outside and loss of confidence, all of which occurred in the eight months between the rape and the trial. The victim testified that these were caused by the emotional distress of the rape. The majority holds that the appellant's objection to this line of testimony was waived, and, additionally, that the testimony was properly admitted.

It is noteworthy that the State's brief responding to ground of error six does not mention waiver, presumably because the appellant made at least four specific objections, each of which was overruled. The first is found at page 273 of the statement of facts. There the appellant objected "to this line of testimony and this line of questioning" on the ground that "the prejudicial

effect and inflammatory nature of that line of questioning outweighs any probative value that it may have in the trial of this cause." This objection was made before any of the challenged testimony was admitted. The appellant objected the second time, on the same ground, at page 274 and was again overruled. The appellant objected the third time at page 275, on the same ground, and was again overruled. The appellant objected the fourth time at page 276, and the objection was overruled.

The victim was asked what had changed about her life since the rape occurred, what had changed about her job, what had changed about her personal life, what she was not able to do "now" (in April 1984, eight months after the rape). She testified that she had lost her job, could not concentrate or work, feared going outside, and was hospitalized for a suicide attempt about one month after the rape and for a second suicide attempt five or six months thereafter.

The only portion of the statement of facts referred to by the majority or the parties concerning this ground of error are pages 273–278. Within these pages almost as much space is taken up by the appellant's objections as by testimony.

In *Roeder v. State,* 688 S.W.2d 856 (Tex. Cr.App.1985), the Court of Criminal Appeals held:

> The primary purpose of the specific objection rule is to ensure that the trial court and opposing counsel are informed of the ground of objection so that first, the trial judge can rule on the objection, and second, opposing counsel may be afforded an opportunity to remove the objection or in some way cure the alleged error. *Zillender v. State,* 557 S.W.2d 515 (Tex.Crim.App.1977).
>
> In accordance with these policies, a number of exceptions to the general rule that a party cannot complain on appeal to the overruling of a general objection or an imprecise specific objection have been created. 1 McCormick & Ray, Evidence, sec. 25, page 25 (2nd edition 1956). Thus, where the correct ground of exclu-

sion was obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection. McCormick & Ray, *supra. Zillender v. State, supra* at 517.

This record demonstrates that both the trial court and the prosecutor were aware of the appellant's objections to the entire line of testimony concerning emotional distress and physical injury resulting therefrom occurring months after the rape. Although the appellant never requested or received a "running" objection, his repeated objections to the entire line of testimony put the court and the State on notice of his complaint. That explains why the waiver analysis of the majority opinion was not made by the State. If this judgment is to be affirmed, it must be on the merits, because there was no waiver.

The evidence of the future emotional distress was admitted on direct examination of the victim during the State's main case. It did not come in rebuttal to any defense evidence, nor in response to any "door" opened by the appellant on cross-examination. No cross-examination had occurred when the evidence was admitted.

The State's sole argument in the trial court was that the evidence was admissible "to show the effect this particular event has had on her life as related to her credibility and believability." At this point in the trial, the victim's credibility had not been attacked on cross-examination, nor had she been contradicted by any witness. Thus, her credibility was being bolstered before it was impeached, although no bolstering objection was made.

It is significant that the appellant's sole defense was alibi. There was no claim of consent. The majority's astonishing claim to the contrary has no support in this record. Even if emotional distress months after a traumatic event is evidence that the event occurred, or further, that it occurred without the victim's consent, that would not justify the admission of such trauma in *this* case where neither the act of intercourse nor the absence of consent were ever questioned.

The appellant testified that the only time he was with the victim was the evening before the rape and that they did not have intercourse then or ever. He denied being with her at all on the day of the rape. The victim testified that the only time she was with the appellant was the night of the rape, when she went to meet him at his motel. The appellant was a total stranger to her, except for phone calls he made to her in the prior two days, at first as part of a supposed telephone survey, and then to invite her to his motel room.

As stated in *Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim.App.1972), the first inquiry in determining whether evidence is admissible is a comparison of the probative value and the prejudicial or inflammatory aspects of the evidence. *See Ruiz v. State*, 579 S.W.2d 206, 209 (Tex.Crim.App.1979).

The only disputed fact issue in this case was whether it was the appellant who raped the victim. I believe there is no rational relationship between the victim's collateral trauma and whether the defendant was the individual who raped her. Such trauma would presumably occur regardless of the offender's identity. There is no indication in the record that this victim's particular trauma was greater or different because of the rapist's identity, so as to make it more likely that the appellant was the offender.[1] The evidence of collateral trauma was thus not material because there was no rational relationship between it and the controlling fact issue in dispute, which was solely whether the defendant was the person who committed the rape.

Rule 403 of the Texas Rules of Evidence and of the Federal Rules of Evidence provides for the exclusion of relevant evidence in some circumstances. These rules provide:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

This is a codification of the rule quoted above from *Albrecht* and *Ruiz*. *Compare Bordelon v. State*, 683 S.W.2d 9 (Tex.Crim. App.1985); *Maynard v. State*, 685 S.W.2d 60 (Tex.Crim.App.1985). *See also* Tex. Code Crim.P.Ann. art. 38.02 (Vernon 1979); Weir and Bernard, *The Application of the New Rules of Evidence to Criminal Proceedings*, 48 Tex.B.J. 518 (1985).

The collateral trauma evidence in this case should have been excluded, even if relevant, because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. There was no dispute concerning whether the victim had undergone a traumatic event, in general, or a rape, in particular. The probative value of such evidence in proving that a rape occurred was, therefore, insignificant or wholly absent. There is little doubt, however, that the victim's suffering prejudiced the jury against the appellant, both on guilt and punishment. While it may be reasonably argued that evidence of collateral trauma should come in at the punishment stage, because convicted defendants who have caused the most harm should get the most punishment, the admission of such evidence at the guilt stage was calculated to confuse the sole disputed issue in the case, the identity of the offender, and to mislead the jury from that question by creating justifiable sympathy for an injured victim.

The danger of confusion of issues is especially great in a case like this one, where the indictment gives no notice, either to the defendant or to the jury, that the defendant must defend against and the jury must evaluate evidence of emotional distress during the eight months after the crime. If courts are going to admit such evidence, defendants will need pre-trial discovery of medical records and the victim's circumstances, as occurs in a personal injury case.

---

**1.** Certain trauma might tend to establish identity, such as a healthy victim being infected during a rape with a venereal disease, followed by proof that the defendant suffered from the same contagious disease at the time of the rape.

Further, courts should expect lengthy dispute over whether the victim could work eight months after the injury, whether the victim was crying eight months after the injury, whether suicide attempts eight months after the injury were due to the act alleged in the indictment, and whether the victim's emotional distress months after the injury truly existed and was caused by the crime alleged. Litigation of such issues is now foreign to Texas criminal practice. Letting them in, in this case through the back door, in order to prove the uncontested element of lack of consent, is likely to have unexpected and undesirable consequences.

We do not have in Texas at this time a bill of particulars practice. There is little that the indictment must say about the offense itself, much less the victim's collateral trauma. Our discovery practice is almost non-existent compared to discovery available in a civil case. The absence of notice that such testimony will be offered and of any opportunity to investigate it before trial should give caution to anyone concerned with preserving a defendant's right to a fair trial. The risks are serious enough at the punishment phase, after guilt has been determined, but the likelihood of unfair prejudice, confusion of the issues and misleading the jury, as well as undue delay, is even greater at the guilt stage.

The harm from the evidence offered in the instant case should not be underestimated. A severely injured victim helps the State prove guilt in a criminal case at least as much as a severely injured victim helps the plaintiff prove liability in a civil case. Juries are more likely to convict when there is an injured victim than when there is an uninjured victim, and they are more likely to convict when there is a severely injured victim than when there is a slightly injured victim. Focusing the jury's attention on the victim's severe injuries is a winning trial tactic for the plaintiff, i.e., the State in a criminal action, because it tends to distract the jury's attention from weaknesses in the plaintiff's case. In the case at bar, the State's key witness, in response to random phone calls from a male purporting to conduct a market survey, voluntarily left her home at night for a private meeting with this total stranger, in his motel room, had sexual intercourse, but had little or no evidence of physical injury and no witnesses to the offense. The State announced its concern that the witness might not be believed and offered the evidence of collateral trauma solely to bolster her credibility, even before it was attacked. The State clearly understood the persuasive value of the evidence.

The cases cited by the majority do not require an affirmance, although several may conceivably allow one. In *Hafti v. State*, 487 S.W.2d 745 (Tex.Crim.App.1972), a robbery by firearms case, the Court held that "where an indictment alleges violence, the state might prove the injuries sustained as result of such violence." *Id.* at 747. This is the entire discussion of the subject, and there is no indication that anything but physical injuries received and apparent at the time of the robbery came into evidence. Nothing indicates that emotional distress suffered months after the robbery was admitted into evidence, as in the instant case.

In *Robinson v. State*, 457 S.W.2d 572 (Tex.Crim.App.1970), an assault to murder case, the entire discussion again consisted of one sentence, which stated: "The offense charged being assault with intent murder, there appears no error in the admission of evidence of the nature and extent of the injuries inflicted upon the assaulted party and the care required for them." *Id.* at 574. As in *Hafti, supra,* there is no suggestion that the evidence admitted showed emotional distress suffered months after the attack.

In *Levell v. State*, 453 S.W.2d 831 (Tex. Crim.App.1970), a robbery by firearms case, the entire discussion consisted of the following:

> The indictment charged robbery by assault, violence, and putting into fear. The state had the right to prove all three. On the allegation of violence, the state may prove the injuries sustained as a

result of such violence. In fact, such is the best proof thereof.

*Id.* at 832. As in *Hafti* and *Robinson, supra,* there is no suggestion that the injuries described resulted from emotional distress occurring months after the attack. The injuries apparently were those the victim suffered as a result of being shot during the robbery.

In *Mack v. State,* 307 S.W.2d 588 (Tex. Crim.App.1957), the offense was statutory rape. The evidence indicated that the victim suffered serious lacerations during the rape, and the evidence admitted concerned these wounds and the amount of blood lost as a result of them. As in *Hafti, Robinson,* and *Levell, supra,* there is no indication that the evidence concerned emotional distress suffered months after the event.

In *Maxwell v. State,* 362 S.W.2d 326 (Tex.Crim.App.1962), the offense was rape by force, and the victim was permitted to exhibit scars on her head where she was struck during the rape with an iron, which rendered her unconscious. The Court noted that the appellant was charged with an assault, as well as with rape, and that the State's proof of force was admissible to prove the assault and the force accompanying the rape. *Id.* at 328. As in *Hafti, Robinson, Levell,* and *Mack, supra,* there was no evidence of emotional distress suffered months after the event.

There are two cases relied on by the majority which tend to support its holding. In *Wood v. State,* 80 Tex.Crim. 398, 189 S.W. 474 (1916), the Court held that the victim's mother was properly allowed to testify that upon making a prompt outcry to her parents the day after the rape occurred, the victim was nervous and crying, and she continued to have nervous crying spells for a month or more when the rape was mentioned. *Id.* at 476–77. The Court stated, "This will be evidence of the severity of the shock to her mental and physical nature." *Wood* is distinguishable from the instant case in two respects. The most important is that consent was raised as a defense. Apparently, the Court concluded that evidence of the severity of the shock

to the victim's mental and physical nature was relevant to negate the evidence of consent. The second distinction is that the evidence was far less prejudicial. It made no mention of job loss, general inability to work, general fear of the outdoors, and multiple suicide attempts. The emotional distress in *Wood* was limited to crying when the rape was mentioned.

In *Burge v. State,* 73 Tex.Crim. 505, 167 S.W. 63 (1914), the original opinion held that it was proper to admit evidence that the victim was nervous and crying for two days immediately following the assault. The Court emphasized that this was part of the victim's condition at the time she made prompt outcry and that prompt outcry may properly be shown in the State's main case. The opinion noted that the evidence of her condition two days after the event was "not too remote from the transaction to render the testimony inadmissible, and, ... we think it is permissible for the state to show that this state continued for a reasonable length of time." *Id.* at 66.

In the opinion on motion for rehearing, the Court held that it was permissible to admit evidence showing that the victim's nervous condition lasted for "about a week." *Id.* at 71. For this proposition, the Court cited *Jacobs v. State,* 66 Tex.Crim. 146, 146 S.W. 558 (1912). As in *Wood, supra,* the facts in *Burge* are distinguishable from the instant case because a week of crying immediately following the event, admitted to prove prompt outcry, is not comparable to eight months of emotional distress and multiple suicide attempts. Further, the victim's prompt outcry in the instant case was undisputed.

Finally, *Jacobs v. State,* cited as authority in *Burge,* is distinguishable, because the defense was consent. 146 S.W. at 561. Further, the victim suffered physical injuries during the attack for which she was confined to her bed "off and on" for two or three weeks. *Id.* at 560. The trauma mentioned in *Jacobs* was physical injury suffered during the rape and did not consist of emotional distress months later.

The majority has thus failed to cite a single rape case in which life-threatening, generalized, incapacitating emotional distress, occurring months after the crime, was admitted in the absence of a consent defense. The authorities in the majority opinion do not compel an affirmance and allow it only upon a significant extension of the holdings in the cases.

I would hold that the error was preserved for appellate review and that the evidence admitted was not material, was harmful, and that its prejudicial effect, under the particular facts of this case, vastly exceeded its probative value. For these reasons, the judgment should be reversed.